ALABASTINE Co. *v.* RICHARDSON and others.[1]

*(Circuit Court, D. Massachusetts.* February 23, 1886.)

PATENTS FOR INVENTIONS—LAWFUL SALE OF PATENTED ARTICLE.
    Where, by agreement, a sale by a manufacturer of a patented article is ratified and made lawful, the vendee of such article may lawfully resell, and there is no violation of the rights secured by the patent.

In Equity.    On motion to dissolve restraining order.
*W. B. H. Dowse* and *J. R. Bennett,* for complainant.
*O. M. Shaw* and *A. Hemenway,* for respondents.

CARPENTER, J.    This is a bill to restrain infringement of letters patent No. 161,591, dated April 6, 1875, and issued to Melvin B. Church, for "improvement in kalsomine," and letters patent No. 255,-937, dated April 4, 1882, and issued to said Church for improvement in "plastic material."    An application was heretofore made *ex parte* to Judge COLT for a restraining order.    At the hearing before. him there was evidence to show that the respondents, who are traders in Boston, sold in the market, on the eighteenth of January, 1886, a package of kalsomining compound, manufactured by the Anti-kalsomine Company of Michigan, and that the compound contained in the package was so made that the sale was an infringement of the claims of the above-stated letters patent.    It was further shown that the complainant, in March, 1885, filed a bill in equity, in the circuit court for the Western district of Michigan, against the Anti-kalsomine Company and others, charging infringement of said letters patent No. 255,937, by the manufacture of the compound above referred to, in which suit a final decree was entered, by consent, on the seventeenth of October, 1885, perpetually enjoining the respondents, and granting other relief.    On this state of the proof the restraining order was granted.

Motion is now made on affidavits to dissolve the restraining order, and this motion has been heard by me, at the request of Judge COLT, who is engaged in the hearing of other causes.    At the hearing on this motion it was proved, on behalf of the respondents, and not denied by the complainant's proofs, that the package of kalsomine sold by the respondents, and whose sale constitutes the infringement charged in this bill, was sold and delivered by the Anti-kalsomine Company to the respondents on or before September 28, 1885; that is to say, before the entry of the final decree in the suit in Michigan. It also appeared that, at the same time with the entry of that decree, there was an agreement made by the complainant and the respondents in that suit, which provides as follows:

"The said Alabastine Company    *    *    *    does herein and hereby release and discharge the parties above named, and each of them, from all claims for

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

profits and damages which might have been recovered by it in said cause; and does further release and discharge the parties above named, and each of them, from all claim for past damages, on account of a claimed past infringement of any of the parties described in the bill of complaint in the cause above referred to, and all claim for past damages by reason of past infringements of any of the letters patent mentioned in the said bill of complaint against persons, firms, or corporations who have heretofore purchased or sold goods of the said parties above named, manufactured and sold prior hereto, in violation of any of the said letters patent; and does covenant and agree to discontinue, within fifteen days hereafter, without prejudice or cost to either party, all suits heretofore commenced by it against all persons whomsoever on account of any alleged past infringements of any of the patents described or referred to in the bill of complaint in said cause; and also on account of having heretofore purchased goods of or dealt with the said defendants, or any of them, in the purchase and sale of goods heretofore manufactured and sold by said parties above named."

I think the effect of this agreement is to ratify and make lawful the sale of the package in question by the Anti-kalsomine Company to the respondents. If that sale is to be taken to be lawful, then it follows that the vendees might lawfully resell the goods, and there would be no violation of the rights of the complainant under the patent. The complainant, however, objects to this conclusion because of the following facts: It appears that, at the time the suit in Michigan was pending, there were also suits pending in other courts for infringements of the patents, by selling the infringing goods, and that one of these suits was against the respondents in this suit. It is further claimed that there was a general agreement for the compromise of the whole dispute, and the settlement of all the suits, and that to this general agreement the respondents were parties, and the complainant refers, for proof of this agreement, to the following words in the affidavit of the respondent Charles Richardson:

"I further depose and say that the package of anti-kalsomine sold by our said firm * * * was a package that our firm had on hand at the time a certain compromise was entered into with the Alabastine Company, the Anti-kalsomine Company, Seeley Brothers, M. B. Church, and ourselves, by reason whereof our firm consented to the dismissal of a suit in equity, then pending between our said firm and the Alabastine Company, as appears on the records of the United States circuit court for Massachusetts."

Assuming it to be proved, then, that there was this general agreement, and that the release above recited was executed in pursuance of that agreement, the complainant contends that the true intent of that release was to discharge all claims for goods theretofore sold to persons who were not parties to the agreement, but that it was not intended to have the effect to validate sales theretofore made between the parties to the agreement in such manner that the goods so sold might lawfully be resold by the vendee. I do not think the transaction can bear this construction. I am not willing to say that, in consequence of the facts above recited, the respondents here are privies in interest to the release. But even if they are to be so considered, I do not think the words of the release are to be limited in

the manner claimed by the complainant. By that instrument the Alabastine Company released to the Anti-kalsomine Company all claims which they had against that company by reason of the manufacture and sale of the patented article, and also all claims which they had against all other persons who had purchased or sold the same article when manufactured by the Anti-kalsomine Company. This latter-named clause of the instrument, perhaps, does not operate as a release to these respondents, even if, as the complainant contends, the respondents are to be treated as if they were privies to that instrument; but it seems to me that the release amounts, at least, to an agreement that the purchase by the respondents, from the Anti-kalsomine Company, of the package in question, shall be taken to have been a lawful purchase. If, then, they purchased it lawfully, if follows that they became the lawful owners as against this complainant. I will not say that there might not be an agreement that the respondents should remain the lawful owners of the goods, and at the same time should remain liable to a suit for infringement if they used them or sold them to others; but the existence of an agreement of this character ought not to be found by means of inferences which are in any degree doubtful. It ought to be established by express words or by necessary implication. I find no evidence of such an agreement in this case. The restraining order, therefore, ought to be dissolved.